IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

RAVI PATEL,

        Plaintiff,

    v.

CIGNA CORPORATION and TAC
PROFESSIONAL STAFFING
SERVICES, INC. D/B/A EDP
CONTRACT SERVICES,

        Defendants.

HONORABLE JEROME B. SIMANDLE

CIVIL NO. 02-6141 (JBS)

**<u>OPINION</u>**

---

APPEARANCES:

Mr. Ravi Patel
1171 South Lane Ave., Apt. 1711
Jacksonville, FL 32205
    Plaintiff <u>pro</u> <u>se</u>

Michael K. Furey, Esq.
RICKER, DANZIG, SCHERER, HYLAND & PERRETTI
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962
    Attorney for Defendant CIGNA CORPORATION

Lori Anne Fee, Esq.
BRAFF, HARRIS & SUKONECK
570 W. Mt. Pleasant Ave.
P.O. Box 657
Livingston, NJ 07039
    Attorney for Defendant TAC PROFESSIONAL
    STAFFING SERVICES, INC.

**SIMANDLE**, District Judge:

Plaintiff, Ravi Patel, brought suit against CIGNA
Corporation ("CIGNA") and TAC Professional Staffing Services,
Inc. d/b/a EDP Contract Services ("EDP") alleging that Defendants
engaged in discriminatory employment practices under Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981(a) ("Title VII") and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5.1 et seq.  Defendants subsequently moved for summary judgment seeking dismissal of the Complaint in its entirety.  For the reasons set forth below, Defendants' motions for summary judgment will be granted.

## I. BACKGROUND

EDP is a personnel staffing company employing persons to serve as temporary staff for other companies.  (Def. Br. at 2.) According to the Master Information Processing Time and Materials Consulting Services Agreement between EDP and CIGNA ("Agreement"), "[EDP]'s personnel, shall work under [EDP]'s supervision."  (Def. Ex. B at 2:6.)  Furthermore, under the Agreement EDP personnel are classified as "independent contractor[s] and not that of a servant, agent or employee" of CIGNA.  (Id. at 6:18.)

On or about November 23, 1998, Plaintiff Ravi Patel was hired by Defendant EDP and placed to work as a consultant at CIGNA's Voorhees, New Jersey office facility.  (Pl. Opp. at 2.) On or about September 10, 2001, EDP's Contract Manager, Jeffery Gowan, allegedly informed Plaintiff that his employment contract would be renewed through November 2002.  (Pl. Compl. at ¶ 16.) Immediately following the terrorists attacks in this country on

September 11, 2001, Plaintiff, who is Indian, alleges that he was subjected to a "systematic and continuous pattern of harassment and discrimination on the basis of his national origin . . . by co-workers at CIGNA."  (Id. at ¶ 18.)  According to Plaintiff, about ten days after September 11 he reported this behavior to Mr. Gowan who failed to take any action.  (Pl. Opp. at 10.)  Mr. Patel then allegedly made a similar complaint to Bruce Kline, CIGNA Manager in the Security Administration.  (Id.)

In his deposition, Mr. Gowan denies that during the course of Mr. Patel's assignment to CIGNA Plaintiff contacted him regarding his working relationship or interactions with any individual at CIGNA.  (Dep. J. Gowan Sept. 19, 2003 ("Gowan Dep.") at 15:10-25.)  In fact, Mr. Gowan stated that Plaintiff told him that CIGNA was a "good place to work."  (Id. at 16:2-4.)  Similarly, Mr. Kline contends that Plaintiff never spoke to him regarding employment discrimination or inappropriate behavior on the part of employees at CIGNA.  (Dep. B. Kline Sept. 19, 2003 ("Kline Dep.") at 4:13-25.)

Mr. Gowan alleges that on September 20, 2001, Plaintiff requested a rate increase of twenty to thirty dollars an hour, a claim which Plaintiff denies.  (Gowan Dep. at 18:13-24; 22:5-6; Dep. of R. Patel April 30, 2003 ("4/30/03 Patel Dep.") at 202:7-24.)  Mr. Gowan subsequently approached Mr. Kline regarding Mr. Patel's proposed rate increase.  Mr. Kline responded that, based

3

on Plaintiff's request, it appeared that Plaintiff no longer wanted to work at CIGNA and, therefore, that his assignment should end.  (Gowan Dep. at 20:3-7.)  According to Mr. Kline, CIGNA management told him that Plaintiff's requested rate increase was not within the company's budget.  (Kline Dep. at 6:6-8.)  On September 29, 2001, Mr. Gowan informed Mr. Patel that Defendant CIGNA had terminated his contract.  (Gowan Dep. at 22:19-24.)

Plaintiff subsequently filed a Charge of Discrimination against CIGNA and EDP with the U.S. Equal Employment Opportunity Commission ("EEOC").  The EEOC Determination dated June 28, 2002, stated that Defendants' actions did constitute a violation of Title VII.  (Def. Ex. I.)  According to the EEOC, the evidence before it indicated that CIGNA had a "sincere interest in extending [Plaintiff's] contract on September 13, 2001."  (Id.) For that reason, the EEOC found it suspect that "approximately one week after September 11 . . . [Plaintiff's] work status became a point of contention."  (Id.)  Several months later, on or about September 3, 2002, the EEOC downgraded its determination, concluding that there was insubstantial evidence to support a claim under Title VII.  (Def. Ex. K.)  On December 31, 2002, Mr. Patel brought this cause of action pursuant to

4

Title VII and NJLAD.  Defendants now move for summary judgment
seeking dismissal of the Complaint in its entirety.[1]

## II. <u>STANDARD OF REVIEW</u>

_____Summary judgment is appropriate when the materials of record
"show that there is no genuine issue as to any material fact and
that the moving party is entitled to judgment as a matter of
law."  Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the
evidence is such that a reasonable jury could return a verdict
for the nonmoving party."  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>,
477 U.S. 242, 248 (1986).  A fact is "material" only if it might
affect the outcome of the suit under the applicable rule of law.
<u>Id.</u>  Disputes over irrelevant or unnecessary facts will not
preclude a grant of summary judgment.  <u>Id.</u>

In deciding whether there is a disputed issue of material
fact, the court must view the evidence in favor of the nonmoving
party by extending any reasonable favorable inference to that
party; in other words, "the nonmoving party's evidence 'is to be
believed, and all justifiable inferences are to be drawn in [that
party's] favor.'"  <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552 (1999)
(quoting <u>Anderson</u>, 477 U.S. at 255).  The threshold inquiry is
whether there are "any genuine factual issues that properly can
be resolved only by a finder of fact because they may reasonably

---

[1] The Court has jurisdiction over this controversy pursuant
to 28 U.S.C. § 1331.  This Court also has jurisdiction over
Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

be resolved in favor of either party." <u>Anderson</u>, 477 U.S. at
250.

The moving party always bears the initial burden of showing
that no genuine issue of material fact exists, regardless of
which party ultimately would have the burden of persuasion at
trial.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).
"[T]he burden on the moving party may be discharged by 'showing'
– that is, pointing out to the district court – that there is an
absence of evidence to support the nonmoving party's case."
<u>Celotex Corp.</u>, 477 U.S. at 325.

The nonmoving party "may not rest upon the mere allegations
or denials of" its pleading in order to show the existence of a
genuine issue.  Fed. R. Civ. P. 56(e).  Plaintiff must do more
than rely only "upon bare assertions, conclusory allegations or
suspicions."  <u>Gans v. Mundy</u>, 762 F.2d 338, 341 (3d Cir. 1985),
<u>cert.</u> <u>denied</u>, 474 U.S. 1010 (1985) (citation omitted).  Thus, if
the plaintiff's evidence is a mere scintilla or is "not
significantly probative," the court may grant summary judgment.
<u>Anderson</u>, 477 U.S. at 249-50.

### III. <u>DISCUSSION</u>

Plaintiff alleges that Defendants engaged in discriminatory
employment practices in violation of Title VII and the NJLAD.
Additionally, Plaintiff asserts that the actions of Defendants
through their agents resulted in a hostile work environment in

violation of both federal and state law.  Plaintiff's arguments are without merit.

A.    Standing under Title VII and NJLAD

      Defendant CIGNA denies that Mr. Patel was its employee, while EDP admits that it employed him.  Thus, the question arises whether CIGNA is a proper defendant here.  In order to bring a claim under Title VII or NJLAD, a plaintiff must be classified as an "employee" under the statutory framework.  Equal Employment Opportunity Commission v. Zippo Mfr. Co., 713 F.2d 32, 37 (3d Cir. 1983) (Congress's objective in enacting Title VII was to eliminate discrimination in employment).  Title VII defines an employee as "an individual employed by an employer."  42 U.S.C. § 2000(e).  According to the U.S. Supreme Court, when Congress provides a definition that is "completely circular and explains nothing," a court must adopt a common law test in order to determine whether an individual qualifies as an employee. Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992).  In determining whether a hired party is an employee under the common law, the Supreme Court considers "the hiring party's right to control the manner and means by which the product is accomplished."  Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751 (1989).  The other factors relevant to the inquiry are:

> (1) the skill required; (2) the source of the
> instrumentalities and tools; (3) the location of the
> work; (4) the duration of the relationship between the
> parties; (5) whether the hiring party has the right to
> assign additional projects to the hired party; (6) the
> extent of the hired party's discretion over when and
> how long to work; (7) the method of payment; (8) the
> hired party's role in hiring and paying assistants; (9)
> whether the work is part of the regular business of the
> hiring party; (10) whether the hiring party is a
> business; (11) the provision of employee benefits; and
> (12) the tax treatment of the hired party.

Id. at 751-52.  No one of these factors is determinative in

evaluating whether an individual is an employee.  Id. at 752.

"[A]ll of the incidents of the relationship must be assessed and

weighed with no one factor being dispositive."  Darden, 503 U.S.

at 324 (quoting Nat'l Labor Relations Bd. v. United Ins. Co. of

Am., 390 U.S. 254, 258 (1968)).

      The NJLAD defines an employee as any individual not

"employed in the domestic service of any person."  N.J.S.A. §

10:5-12.  Under the statute an independent contractor is not

considered an employee.  DaBronzo v. Roche Vitamins, Inc., 232 F.

Supp. 2d 306, 314 (D.N.J. 2002).  In construing the NJLAD, state

courts have often looked to federal precedent governing Title VII

"as a key source of interpretative authority."  Id. at 313

(citation omitted).  Since the language in the NJLAD does not

provide a useful definition of employee, the common law agency

test should also be used to determine whether Plaintiff is an

employee or independent contractor under the NJLAD.  See Pukowsky

v. Caruso, 711 A.2d 398, 404 (N.J. Super. Ct. App. Div. 1998)

(noting that federal common law agency principles should be used to determine whether an individual is an employee under NJLAD).

Since EDP concedes that Plaintiff was its employee at all relevant times, (Def. Br. at 4,) the Court will examine each factor of the common law test only as it applies to Plaintiff's relationship with CIGNA.  Based on these factors, even extending all favorable inferences to Mr. Patel, this Court finds that as a matter of law Plaintiff was an independent contractor and not an employee of CIGNA.

    1.  <u>Right to Control</u>

All other factors being equal, the right to control an individual's physical conduct may be determinative.  <u>Metro. Pilots Ass'n, L.L.C. v. Schlosberg</u>, 151 F. Supp. 2d 511, 519 (D.N.J. 2001) (citing <u>Eisenberg v. Advance Relocation & Storage</u>, 237 F.3d 111, 115 (2d Cir. 2000)).  Courts should place the greatest emphasis on the hiring party's right to control the manner and means by which the work is accomplished.  <u>Id.</u>  This factor evaluates "the extent of control, which by the agreement, the master may exercise over the details of the work."  <u>Marco v. Accent Publ'g Co., Inc.</u>, 969 F.2d 1547, 1550 (3d Cir. 1992); Restatement (Second) of Agency § 220(2)(a) (1958).  The mere monitoring of an independent contractor does not constitute control.  <u>Carney v. Dexter Shoe Co.</u>, 701 F. Supp. 1093, 1099 (D.N.J. 1988) (concluding control not exerted when an individual

was not required to work a certain number of hours or handle a certain number of calls per day).

Even though Mr. Patel received work through a computer system at CIGNA, the Master Information Processing Time and Materials Consulting Services Agreement between EDP and CIGNA explicitly states that "[EDP]'s personnel, shall work under [EDP]'s supervision." (Def. Ex. B at 2:6.) Additionally, the Agreement states that consultants are not employees, agents or servants of CIGNA. (Id. at 6:18.) While Mr. Patel was required to work the same hours as CIGNA employees, this requirement was set forth in a Contract Employee Agreement between Mr. Patel and EDP. (Def. Ex. G at ¶ 2.) Even viewing the evidence in the light most favorable to Mr. Patel, CIGNA had no right to control the manner and means by which Plaintiff performed his job. Accordingly, this most important factor supports a finding that Mr. Patel was an independent contractor.

2.   Requisite Skill

Individuals who are unskilled labor are usually regarded as employees rather than independent contractors. Schlosberg, 151 F. Supp. 2d at 520; Restatement (Second) of Agency § 220(2)(d) (1957). Here, Plaintiff holds an associate degree from an Indian school. (4/30/03 Patel Dep. at 88:17-20.) Prior to moving to the United States in 1997, Plaintiff worked in computer networking for six or seven years in India. (Id. at 86:17-

10

17;92:2-6.)  In January of 1998, Mr. Patel began taking courses at C.N. Technologies in the United States because he needed to enhance his computer skills in order to secure a networking position in the United States.  (Id. at 92:7-17.)  During this time, Plaintiff "volunteered" his networking services to Omega Corporation, a consultant company owned by his sister.  (Id. at 86:14-24; 87:2-3; 92:11-24; 93:1-3.)

When Mr. Patel began working at CIGNA in 1998, Plaintiff was expected to know how to perform assignments before he received them.  (Id. at 149:9-13.)  At CIGNA, Plaintiff was responsible for adding user IDs, data migration, ID migration and creating mailboxes.  (Id. at 150.)  Moreover, he received no special training nor participated in any courses on how to perform his daily responsibilities.  (Id.)  Based on this evidence, Plaintiff was a skilled worker and, thus, likely an independent contractor.

   3.   Duration of the Relationship

A working relationship between an individual and a company that developed over a considerable period of time indicates that an individual is an employee rather than an independent contractor.  Restatement (Second) of Agency § 220(2)(e) (1958).  Mr. Patel began working at the Voorhees CIGNA facility in November of 1998.  (4/30/03 Patel Dep. at 143:11.)  Plaintiff was released from his responsibilities at CIGNA in September of 2001.  (First Am. Compl. at ¶ 24.)  Plaintiff's three year working

relationship with CIGNA is insufficient to establish that he was an employee of CIGNA.

    4.   Degree of Discretion

    "An employer-employee relationship is more likely to exist when the hired party exerts a greater discretion over when and how long to work." Schlosberg, 151 F. Supp. 2d at 522.  Here, Plaintiff had no such discretion.  According to Plaintiff's Contract Employee Agreement with EDP, Mr. Patel was required to work the same hours as CIGNA employees.  (Def. Ex. G at ¶ 2.) Furthermore, the Contract provided that Plaintiff's overtime hours had to be approved by personnel at CIGNA.  (Id. at ¶ 13.) Mr. Patel was required to record hours worked at CIGNA on an EDP form and submit such forms to EDP on a weekly basis.  (Id.; Def. Ex P.)  While CIGNA exerted control over the overtime hours worked by Plaintiff, an EDP contract set forth the required working hours.  Therefore, even viewing the facts in the light most favorable to Mr. Patel, this factor supports the conclusion that no employer-employee relationship existed between Plaintiff and CIGNA.

    5.   Method of Payment

    To determine whether an individual is an employee or an independent contractor, the court may also look at whether the worker is paid hourly or by salary.  Schlosberg, 151 F. Supp. 2d at 523.  An additional factor to consider is the source of that

payment.  Id.  Independent contractors are often paid a sum based
on the completion of a specific job.  Reid, 490 U.S. at 753
(quoting Holt v. Winpisinger, 811 F.2d 1532, 1540 (D.C. Cir.
1987)).  Here, Mr. Patel was paid on a weekly basis for the hours
worked at the CIGNA facility.  (4/30/03 Patel Dep. at 141:11-16.)
Plaintiff received his paycheck directly from EDP and was only
paid for the amount of work he performed.  (Id. at 141:17-21;
143:3-5.)  Since Mr. Patel was paid by EDP only for the hours he
worked at CIGNA, he was likely an independent contractor and not
an employee of CIGNA.

　　　　6.   The Provisions of Employee Benefits

　　　Employees typically receive employee benefits.  Reid, 490
U.S. at 753.  In his deposition, Mr. Patel stated that he did not
receive health care insurance from CIGNA.  (4/30/2003 Patel Dep.
at 105-7;109.)  Furthermore, Plaintiff noted that he participated
in the 401k plan at EDP, not CIGNA.  (Id. at 141-2.)  Based on
this evidence, Mr. Patel was likely an independent contractor and
not an employee of CIGNA.

　　　　7.   Tax Treatment of the Hired Party

　　　　　Here, Plaintiff's income taxes were withheld by EDP.  (Gowan
Dep. at 5:25; 6:1.)  This factor indicates that Mr. Patel was an
independent contractor and not an employee of CIGNA.

　　　After viewing the above evidence in the light most favorable
to Mr. Patel, and balancing all the factors in the Reid test,

this Court concludes as a matter of law that Plaintiff was an independent contractor and not an employee of CIGNA.  To be sure, some factors do support the inference that Mr. Patel was an employee.  For example, there is no evidence from the record that Mr. Patel provided his own instruments or tools.  See Restatement (Second) of Agency § 220(2)(e) (1958) (noting that an individual who provides his own tools and instrumentalities is usually considered an independent contractor).  Indeed, Plaintiff was given a computer terminal and cubicle at the CIGNA facility. (4/30/03 Patel Dep. at 144:24; 145:1-9.)  Moreover, Mr. Patel worked at the CIGNA Voorhees, NJ facility location.  (Id. at 145:8-9); See Restatement (Second) of Agency § 220(2)(e) (1958) ("There is a strong indication of an employee-employer relationship if the work is performed on the premises of the employer.")  During the first six months that Mr. Patel worked at the CIGNA facility he verbally received assignments from various CIGNA employees.  (Id. at 145:21-24; 146-7); See Schlosberg, 151 F. Supp. 2d at 522 ("An employer-employee relationship is more likely to exist if the hiring party has the right to assign additional projects to the hired party.")  Additionally, there is no indication that Mr. Patel was able to hire assistants.  See Schlosberg, 151 F. Supp. 2d at 523 (stating that an individual who can hire assistants is considered an independent contractor).

14

However, the majority of the factors, including the most
important factor – the right to control the manner and the means
by which the product is accomplished - weigh in favor of finding
that Mr. Patel was not as a matter of law an employee of CIGNA.
For that reason alone, CIGNA's motion for summary judgment should
be granted.  Even if Plaintiff was considered an employee of
CIGNA under Title VII and NJLAD, though, the same result would
follow.

B.   Employment Discrimination Claim

Plaintiff alleges Defendants CIGNA and EDP engaged in
discriminatory employment practices in violation of Title VII and
NJLAD.  Because both statutes utilize the same analytical
framework, they will be discussed together.  Hargrave v. County
of Atlantic, 262 F. Supp. 2d 393, 411 n.7 (D.N.J. 2003).  See
Abramson v. William Paterson College of New Jersey, 260 F.3d 265,
277 n.7 (3d Cir. 2001) (observing that "any plaintiff who has
fulfilled a Title VII prima facie case will have shown the
elements required by the NJLAD"); Murphy v. Housing Auth. and
Urban Redevelopment Agency of the City of Atlantic City, 32 F.
Supp. 2d. 753, 763 (the prima facie elements of employment
discrimination are the same under Title VII and NJLAD).

A plaintiff may establish a claim of employment
discrimination through direct evidence or by establishing the
prima facie elements for discrimination.  Fakete v. Aetna, Inc.,
308 F.3d 335, 337 (3d Cir. 2002).  Direct evidence is evidence

15

sufficient to allow the jury to find that the "decision makers placed substantial negative reliance on [the plaintiff's national origin] in reaching their decision." Id. at 338 (citing Connors v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3d Cir. 1998)). Such evidence "leads not only to a ready logical inference of bias, but also to a rational presumption that the person expressing bias acted on it" when he made the allegedly adverse employment decision. Id. at 338-339 (quoting Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1097 (3d Cir. 1995)). Plaintiff in this case alleges that CIGNA and EPD engaged in unlawful discrimination, however, both claims fail.

　　1.　CIGNA

　　Here, Plaintiff offers no direct evidence to establish a claim of employment discrimination against CIGNA. First, Plaintiff alleges that Josh Whalen, Fred Buonavolta, Bernard Swayer and John Zubyk, among others, directed harassing comments towards Plaintiff. (Dep. of R. Patel Sept. 11, 2003 ("9/11/03 Patel Dep.") at 40:18-21; 108:7-13.) However, there is no indication that these individuals had any involvement in CIGNA's decision to release Mr. Patel from his responsibilities at CIGNA. Nor is there evidence that management's decision was influenced by the employees' alleged comments.

　　Moreover, the record suggests that CIGNA's decision to release Plaintiff from his responsibilities at CIGNA was solely based on the company's budgetary constraints. In his deposition,

Mr. Kline stated that CIGNA management informed him that the
company could not afford Mr. Patel's requested rate increase.
(Kline Dep. at 6:3-8.)  The record is void of evidence suggesting
that Mr. Kline placed any reliance on Mr. Patel's national origin
in reaching this decision.  Therefore, there is no direct
evidence establishing bias.

     Similarly, Plaintiff fails to establish a prima facie case
of employment discrimination.  A plaintiff may establish a prima
facie case of discrimination by showing that: (1) he is a member
of a protected class; (2) he was laid off from a job which he was
qualified for; and (3) others outside the protected class were
treated more favorably.  Massarsky v. General Motors Corp., 706
F.2d 111, 118 (3d Cir. 1983).  If the plaintiff is able to make a
showing as to each element, the burden shifts to the employer to
proffer a legitimate nondiscriminatory reason for the allegedly
adverse treatment.  Id.  Upon a sufficient proffer, the burden
then shifts back to the plaintiff to demonstrate that the
defendant's reasons are pretext for unlawful discrimination.  Id.

     Here, Plaintiff is a member of a protected class.  Saini v.
Bloomsburg Univ. Faculty, 826 F. Supp. 882, 887 (M.D.Pa. 1993)
(noting that an Asian Indian individual is a member of a
protected class).  Plaintiff's responsibilities with CIGNA
concluded on September 29, 2001.  (Gowan Dep. at 22:19-24.)
Based on Mr. Patel's education and employment experiences, he was
qualified for the position.  (Def. Ex. Q.) CIGNA concedes that

17

Plaintiff's performance while at CIGNA was satisfactory.  (Kline Dep. at 11:12-17.)  Therefore, Mr. Patel meets the first two requirements of a prima facie case of discrimination.

However, Mr. Patel fails to satisfy the third requirement because there is no indication that others outside the protected class were treated more favorably.  After EDP released Plaintiff, Mr. Gowan hired Michael Craw as his replacement and assigned him to the CIGNA account.  (Gowan Dep. at 23:2-20.)  The record does not indicate the national origin of Mr. Craw nor does it provide information on the race or national origin of consultants retained by CIGNA.  Likewise, there is no evidence that any similar employee was paid at the rate which was denied to Mr. Patel.  Indeed, there was at least one other individual of Indian descent working in this CIGNA office.  (4/30/03 Patel Dep. at 183:5.)  There simply is no indication that individuals outside of the protected class were treated more favorably than Mr. Patel.  Thus, Plaintiff has failed to establish a prima facie case for employment discrimination against CIGNA.[2]

Even if Plaintiff had established a prima facie claim of employment discrimination against CIGNA, Defendant offers a nondiscriminatory reason that is not pretextual.  Specifically, CIGNA maintains that Mr. Patel was released from his

---

[2]For these same reasons, Plaintiff's claim of retaliation is without merit.  See Verdin v. Weeks Marine Inc., 2005 WL 357006, at *96 n.2 (3d Cir. Feb. 16, 2005) (unpublished opinion) (citing McKenna v. Pac. Rail Serv., 32 F.3d 820, 826 n.3 (3d Cir. 1994)).

responsibilities at the company as a result of his requesting a twenty to thirty dollar rate increase.  Subsequently, Mr. Kline informed Mr. Gowan that CIGNA could not afford Plaintiff's requested pay increase and, therefore, that Mr. Patel should be released from his duties at the company.  (Kline Dep. at 6:3-8.) This proffered reason is enough to satisfy Defendant's burden of a non-discriminatory reason for the action taken.

Moreover, no reasonable factfinder could conclude that Defendant's proffered reason was pretextual.  Defendant's proffered reason is not pretext.  The Third Circuit has recognized two ways in which a plaintiff can prove pretext. First, the plaintiff can present evidence that "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication." Parks v. Rumsfeld, 2005 WL 19465, at *384 (3d Cir. Jan. 5, 2005) (unpublished opinion) (quoting Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994)). This prong is intentionally a "stringent standard" for plaintiffs because "federal courts are not arbitral boards ruling on the strength of 'cause' for discharge.  The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (quoting Carson v. Bethlehem Steep Corp., 82 F.3d 157, 159 (7th Cir. 1996)).

19

Alternatively, a plaintiff can provide evidence that "allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Id. at 1111. In other words, a plaintiff must demonstrate "weaknesses, implausibilities, inconsistences, incoherencies, or contradiction in the employer's proffered legitimate reasons for its actions" such that the "employer's articulated reason was not merely wrong, but that it was 'so plainly wrong that it cannot have been the employer's real reason.'" Jones v. School Dist. of Philadelphia, 198 F.3d 403, 413 (3d Cir. 1999) (quoting Keller, 130 F.3d at 1108-09).

Here, Plaintiff does not present evidence that the legitimate reason proffered by Defendant CIGNA was pretext for unlawful discrimination. Mr. Gowan, an employee of EDP, informed Mr. Patel that his requested pay increase to $85 was not a figure that EDP could afford to pay Plaintiff. Similarly, Mr. Gowan stated that EDP could not find Mr. Patel another position outside of CIGNA that could pay Plaintiff his current salary of $55. (Gowan Dep. at 19:6-11). To be sure, Mr. Patel denies that he ever provided Mr. Gowan with a specific figure for a pay increase. (4/30/03 Patel Dep. 202:20-24.) Instead, Plaintiff maintains that he informed Mr. Gowan that he should determine Mr. Patel's rate increase. (Id. at 203:7-14.) This evidence however, is insufficient to satisfy Plaintiff's stringent burden of raising a genuine issue of material fact from which a

reasonable jury could conclude that the real reason behind Defendant's decision to release Plaintiff from his responsibilities at CIGNA was discrimination.

    2.   <u>EDP</u>

    Similarly, Mr. Patel fails to establish a claim of employment discrimination against EDP.  First, there is no direct evidence to support Plaintiff's claim of discrimination.  Specifically, Mr. Patel concedes that no EDP employee, including Mr. Gowan, made a discriminatory comment directed at Plaintiff.  (9/11/03 Patel Dep. at 130:12-25.)  Therefore, there is no indication that any EDP employee placed negative reliance on Plaintiff's national origin in reaching its alleged adverse employment decision.

    Additionally, Plaintiff cannot establish a prima facie case of discrimination.  Specifically, Plaintiff cannot satisfy the second prong of a prima facie discrimination case because Plaintiff has failed to provide this Court with any evidence of adverse employment action by EDP.[3]  Furthermore, there is no indication that members outside of the protected class were

_____

[3]Even if Plaintiff established a prima facie case of employment discrimination, Mr. Patel is not able to demonstrate that EDP's nondiscriminatory reason for not placing Plaintiff in another position was pretext for unlawful discrimination. Specifically, EDP alleges that Plaintiff never provided an updated resume and that alone was the reason Plaintiff was never placed at a new job site.  Plaintiff, though, offers no evidence even suggesting that Defendant's nondiscriminatory reason is pretext for unlawful discrimination.

treated more favorably than Mr. Patel.  Since Plaintiff cannot
survive a motion for summary judgment based on mere allegations,
EDP's motion for summary judgment should be granted.

C.   Hostile Work Environment Claim

     Finally, Plaintiff alleges that actions of Defendants and
their employees subjected Mr. Patel to a hostile work environment
in violation of Title VII.  (Pl. Compl. at 6-7.)  A hostile work
environment claim requires a plaintiff to show that the workplace
is permeated with "discriminatory intimidation, ridicule and
insult" that is "sufficiently severe or pervasive to alter the
conditions of the victim's employment and create an abusive
working environment."  Harris v. Forklift Sys., Inc., 510 U.S.
17, 21 (1993) (quoting Meritor Savings Bank, FSB v. Vinson, 477
U.S. 57, 67 (1986)).  In order to establish a hostile work
environment claim, a plaintiff must show that: (1) he suffered
intentional discrimination because of his national origin; (2)
the discrimination was pervasive and regular; (3) it
detrimentally affected him; (4) it would have detrimentally
affected a reasonable person of the same protected class in his
position; and (5) there is a basis for vicarious liability.
Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001).  In
evaluating a hostile work environment claim, a court should look
at "all the circumstances, including the 'frequency of the
discriminatory conduct; its severity; whether it is physically
threatening or humiliating, or a mere offensive utterance; and

22

whether it unreasonably interferes with an employee's work performance.'"   Faragher v. City of Boca Raton, 524 U.S. 775, 787-788 (1998) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).

Here, Mr. Patel alleges that co-workers suggested that Plaintiff "americanize" his name.  (4/30/03 Patel Dep. at 175:21-24.)  Plaintiff contends that he was repeatedly asked if he had attended pilot training school and knew how to fly crop dusters. (Pl. Opp. at 8.)  Further, Mr. Patel maintains that since the beginning of 2000 co-workers commented that Plaintiff looked like a "pipe bomber" and made gestures to indicate such.  (Id. at 9.) On September 12, 2001, Plaintiff shaved his goatee and various co-workers inquired as to whether he was trying to "hide something."  (9/11/03 Patel Dep. at 101:3-19; 102:15-16.) Additionally, Mr. Patel alleges that comments made by co-workers that his food was "nasty" and had a "bad smell" were humiliating. (Id. at 103:6-17.)

These allegations are insufficient to establish a hostile work environment claim.  First, there is no indication that the above mentioned incidents were sufficiently severe. Specifically, "[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not rise to the level of a hostile work environment claim.  Faragher, 524 U.S. at 788. Such standards "ensure that Title VII does not become a 'general civility code.'"  Id. (quoting Oncale v. Sundowner Offshore

Services, Inc., 523 U.S. 75, 80 (1998)).  Specifically, comments made by co-workers regarding the smell of ethnic food, even viewed collectively with other alleged hostile incidents, do not rise to the level of a hostile work environment claim.  Kosereis v. Rhode Island, 331 F.3d 207, 216 (1st Cir. 2003) (noting that allegations of name calling and teasing about ethnic food do not rise to the level of "severe conduct" required for a hostile work environment claim).

Furthermore, Plaintiff does not argue that the alleged comments were physically threatening.  Indeed, in Ashok v. Barnhart, the plaintiff's hostile work environment claim was dismissed even after she alleged that a co-worker threatened to "break her legs" and the words "Bloody Indian" were found scrawled on her jacket.  289 F. Supp. 2d 305, 308, 312 (E.D.N.Y. 2003).  While the alleged comments about pilot training school and pipe bombers could be considered offensive, no fellow employee threatened Mr. Patel with physical harm or retribution and these crude remarks are insufficient to establish a hostile work environment claim.

Second, Plaintiff failed to establish that the comments were pervasive.  Mr. Patel brings to this Court's attention five alleged comments directed at him by co-workers during the course of his contract at CIGNA.  However, in Negron v. Rexam Inc., allegations that co-workers addressed a plaintiff on a handful of occasions using a racial epithet were insufficient to survive a

24

summary judgment motion on a hostile work environment claim. 2004 WL 1496878, at *770 (2d Cir. July 1, 2004) (unpublished opinion).  Similarly, in <u>Rodriquez v. Saint-Gobain Containers, Inc.</u>, the court noted that the plaintiff asserted four allegations: plaintiff received written notes stating "return to Mexico"; grease and oil were deposited in his toolbox; he experienced unexplained "locker problems;" and racially derogatory comments were directed at him.  2003 WL 22977476, at *834 (7th Cir. Dec. 17, 2003) (unpublished opinion).  Based on this evidence, the <u>Rodriquez</u> court concluded that, even though the treatment was objectionable, the plaintiff failed to establish a hostile work environment claim because he failed to show that the comments created an objectively intolerable environment.  <u>Id.</u>

Here, Plaintiff alleges that the harassing comments were "periodic."  (Pl. Opp. at 9.)  However, this statement does not provide this Court with sufficient evidence of the duration and frequency of the alleged harassing comments.  Cumulatively, these comments could not be found by a reasonable jury to have been "pervasive" in Mr. Patel's workplace.  After collectively evaluating the alleged comments, this Court concludes that Plaintiff has failed to point to evidence which, even if accepted as true, could establish a hostile work environment claim.  Since Plaintiff cannot survive a motion for summary judgment based upon

mere allegations, Defendant CIGNA's motion for summary judgment will be granted.[4]

Lastly, Plaintiff has failed to assert a hostile work environment claim against EDP.  To assert an actionable claim, there must be some basis for vicarious liability.  Here, the alleged harassing comments were made by CIGNA employees in its Voorhees, New Jersey office facility.  Plaintiff explicitly stated that neither Mr. Gowan, nor any other EDP employee, made any discriminatory comments to Mr. Patel.  (9/11/03 Patel Dep. at 130:12-25.)  Since EDP is not responsible for the actions of CIGNA employees, Plaintiff has failed to establish a hostile work environment claim against EDP.  Therefore, summary judgment should be granted as to EDP.

---

[4]The result would not be any different under the NJLAD.  To establish a hostile work environment under the NJLAD, a plaintiff must demonstrate that the defendant's conduct (1) would not have occurred but for employee's national origin; and the conduct was (2) serve or pervasive enough to make a (3) reasonable person of the same protected class believe that (4) the conditions of employment are altered and the working environment is hostile or abusive.  Cardenas, 269 F.3d at 263.

**IV. <u>Conclusion</u>**

For the reasons expressed in this Opinion, the motion for summary judgment by Defendants CIGNA and EDP will be granted and Plaintiff's Complaint will be dismissed in its entirety.

**July 12, 2005**                       **s/ Jerome B. Simandle**
Date                                  JEROME B. SIMANDLE
                                   United States District Judge